John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Counsel for Plaintiff Koester*

*Additional Counsel Listed on the Signature Page*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| *IN RE: CROSSROADS TRADING, INC. DATA BREACH LITIGATION*<br><br>This Documents Relates To:<br>       All Actions | Lead Case No. 3:25-cv-03128-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure and Northern District of California Civil Local Rule 16-9, Plaintiffs and Defendant Crossroads Trading, Inc. ("Crossroads" or "Defendant") jointly submit this case management statement in advance of the July 17, 2025 Case Management Conference.

**1.    Jurisdiction and Service**

Plaintiffs contend that jurisdiction is proper under 28 U.S.C. §1332(d). Plaintiffs also contend that the Court's exercise of personal jurisdiction over Defendant is proper as Defendant maintains its principal place of business within this District.

Defendant was served with the summons and complaint and no party remains to be served. Defendant does not presently contend that jurisdiction is improper, but reserves all rights pending the filing of Plaintiff's forthcoming Consolidated Complaint and Defendant's corresponding deadline for filing its response thereto.

**2.    Alleged Facts**

**Plaintiff's Statement**

Defendant Crossroads Trading, Inc. operates a retail clothing company with 38 locations nationwide. In the regular course of providing its services, Defendant collects and stores the personal identifying information ("PII") of its customers and others, including their names, driver's license numbers, and other sensitive information. On or about February 15, 2025 Defendant experienced a cyberattack in which threat actors gained access to a portion of its network on which PII was stored and locked down and encrypted portions of Defendant's network (the "Data Breach"). Following its detection of the event and a subsequent investigation, Defendant began to inform the individuals, including Plaintiffs and Class Members, whose PII was potentially accessed on or about March 26, 2025.

Plaintiffs allege that Defendant was aware of the threat of cyberattacks designed to gain access to personal information and failed to properly implement and maintain data security policies and procedures in the face of that threat. Plaintiffs further allege that Defendant had a duty under the common law and state and federal statutes to implement reasonable safeguards and failed to adhere to that duty, and that Defendant failed to promptly and adequately notice Plaintiffs and

Class members of the Data Breach. Plaintiffs further allege that they have been injured as a result of the compromise of their PII following its access by unauthorized individuals during the Data Breach.

**Defendant's Statement**

Defendant Crossroads Trading, Inc. operates a retail clothing company with 38 locations nationwide. At all relevant times, Defendant has maintained and followed procedures designed to safeguard and prevent the unauthorized disclosure of sensitive data to third parties, in accordance with all applicable laws. Despite this, Defendant experienced a data security incident in February 2025 and immediately took affirmative steps to manage the incident and provide notice to potentially affected parties. Defendant denies all of Plaintiffs' material allegations, including Plaintiffs' entitlement to individual or class-wide relief, and intends to vigorously defend itself in the event the parties are not able to reach a near-term settlement.

### 3. Legal Issues

**Plaintiffs' Statement**

Plaintiffs believe the key legal issues include:

- Whether Defendant had a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, using and/or safeguarding their PII;

- Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

- Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

- Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

- Whether Defendant failed to comply with its own policies and applicable laws regulations, and industry standards relating to data security;

- Whether Defendant adequately, promptly and accurately informed Plaintiffs and Class Members that their PII had been compromised;

- How and when Defendant actually learned of the Data Breach;

- Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiffs and Class Members;

- Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur; and

- Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members

**Defendant's Statement:**

Defendant believes the key legal issues include:

- Whether Defendant had a legal duty to Plaintiffs and the putative class to exercise due care in collecting, storing, using, and/or safeguarding their PII (to the extent the data at issue constitutes PII in the first instance);

- Whether Defendant knew or should have known of the susceptibility of its data security systems to a data security incident of the type referenced in the Complaint;

- Whether Defendant's security procedures and practices to protect its systems were reasonable;

- Whether Defendant could reasonably, and without undue burden and expense, have taken additional steps to protect the data of Plaintiffs and the putative class from disclosure in the specific context of the data security incident referenced in the Complaint;

- Whether Defendant complied with applicable laws, regulations, and industry standards relating to data security;

- Whether Defendant adequately, promptly, and accurately informed Plaintiffs and members of the putative class that their PII had been compromised;

- Whether Plaintiffs and the putative class suffered any concrete harm as a result of Defendant's conduct alleged in the Complaint;

- Whether the specific forms of harm alleged in the Complaint are in fact attributable to Defendant's conduct, as opposed to the conduct of one or more third parties (including other companies or persons who may have independently experienced one or more data security incidents that separately resulted in the exfiltration of the same/similar data); and

- Whether any class can be certified.

Each party reserves the right to supplement this list.

**4.     Motions**

On June 11, 2025, Plaintiff Meghan Koester filed an Administrative Motion to Consider Whether Cases Should Be Related and counsel for the related cases[1] stipulated to consolidate the actions into the first filed *Koester* action. ECF Nos. 9-12. On June 12, 2025, the Court Ordered the cases related and granted the stipulation to consolidate the related cases into the *Koester* action. ECF No. 13.

Following consolidation, the Parties have met and conferred regarding the potential for early resolution and have agreed to explore settlement discussions. The Parties have agreed to exchange informal discovery and concurrently with this filing have submitted a stipulation to stay proceedings or continue the CMC to conserve resources and allow for settlement discussions.

In the event the Parties proceed to formal discovery, the Parties intend to submit a stipulated protective order and, as discussed below, the parties will meet and confer about electronically stored information ("ESI"), including the appropriate scope of preservation for ESI, and will submit a stipulation on the subject.

In the event settlement discussions are unsuccessful, Plaintiffs anticipate filing a motion for class certification after the completion of necessary fact and expert discovery. In that event, Defendant anticipates opposing Plaintiffs' motion for class certification and/or filing a motion for summary judgment.

**5.     Amendment of Pleadings**

In accordance with the Order Consolidating the Related Cases, Plaintiffs intend to file their Consolidated Complaint on or before July 14, 2025.[2] Defendant intends to file its response to the Consolidated Complaint on or before August 13, 2025. Depending on the specific contents of the

---

[1] *Koester v. Crossroads Trading, Inc.*, No. 3:25-cv-03128-AGT (N.D. Cal.); *Medina v. Crossroads Trading Co., Inc.*, No. 3:25-cv-03309 (N.D. Cal.); *Wright v. Crossroads Trading Co., Inc.*, No. 4:25-cv-03332 (N.D. Cal.); and *Tardd v. Crossroads Trading Co., Inc.*, No. 3:25-cv-03346 (N.D. Cal.).

[2] With the deadline falling on Saturday July 12, the first business day thereafter is July 14, 2025.

Consolidated Complaint, Defendant's response may consist of a motion to dismiss, motion to strike certain portions thereof, and/or another form of challenge to the pleadings.

**6.    Evidence Preservation**

The Parties have reviewed the Court's Guidelines Relating to the Discovery of Electronically Stored Information and understand their obligations regarding preservation of evidence and are complying with them.

**7.    Disclosures**

The Parties will exchange initial disclosures on or before July 24, 2025.

**8.    Discovery**

As set forth in the pending motion to stay, the Parties' position is that the case should be stayed for a period of (90) days to allow the parties to engage in settlement discussions and exchange informal discovery while conserving party and judicial resources. At this time, the parties believe the default discovery limitations under the Federal Rules suffice but reserve the right to request additional discovery as needed.

The parties will meet and confer over the form of a proposed Stipulated Protective Order and proposed Stipulated ESI Order. The parties do not anticipate any disputed issues involving ESI but will meet and confer should the production of electronic data, or the method of such production, become issues.

**Plaintiffs' Statement**

In the event that settlement discussions are unsuccessful, Plaintiffs believe that discovery should commence immediately. Plaintiffs believe that a longer discovery phase is warranted here as data breach cases involve intensive expert investigation and iterative discovery efforts. Plaintiffs anticipate that the scope of discovery will include: (i) the nature and scope of the Data Breach, (ii) efforts to prevent or contain the Data Breach or similar cyber intrusions, (iii) how the Data Breach occurred; (iv) persons and entities who could have prevented the Data Breach and Defendant's data security practices and training regimen; (v) the investigation of and response to the Data Breach; (vi) the victims of the Data Breach; and (vii) the distribution of Data Breach victims' PII on the dark web and other criminal marketplaces.

**Defendant's Statement**

Defendant agrees that a longer discovery phase is warranted in this case, given the complexity of issues and need to engage expert witnesses.

9. **Class Actions**

Plaintiffs bring this action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a nationwide class of similarly situated individuals. Plaintiffs intend to seek class certification after the completion of necessary fact and expert discovery. Defendant contends Plaintiffs' claims are not appropriate for class treatment, and therefore reserves all defenses and arguments related to class certification.

The parties have proposed a schedule for briefing class certification below in Section 16.

The parties have reviewed and are familiar with this District's Procedural Guidance for Class Action Settlements.

10. **Related Cases**

All related cases have been consolidated into the instant action and Plaintiffs will file their consolidated complaint on or before July 14, 2025.

11. **Relief**

**Plaintiffs' Statement**

The precise calculation of damages is subject to expert testimony and investigation. Subject to that testimony, Plaintiffs provide the following computation of damages at this early stage, which is subject to amendment:

A. Lifetime protection for individuals who received letters notifying them of the data breach, using the following criteria:

   1. Cost per month for a consumer to purchase identity theft protection over the last 20 years. In that time the cost for 3 Bureau monitoring, insurance, dark web monitoring, social media monitoring, public record monitoring, bank account monitoring, tax refund monitoring, and other necessary features including full customer care has risen from an average of $18 per month ($216 per year) in 2005 to the current pricing of $29 per month ($348 per year). In that 20 year time span new features have certainly

      been added as the price has increased. The average paid by consumers for this protection over the past 20 years was +/- $24 per month or $288 per year.

2. Lifetime of each of the affected people will average approximately 50 years.

3. Annual costs increases. Cost of a premium credit monitoring/identity theft service will rise by an average of $5 every 20 years:

   -     2025 – 2045 avg. = $29 per month / $348 per year
   -     2045 – 2065 avg. = $34 per month / $408 per year
   -     2065 – 2085 avg. = $39 per month / $468 per year

4. Technology updates. In this time span there will be continuous additional new features and technology deployed to protect against the current threat matrix that exists. The credit monitoring/identity theft service evolves as the threat level evolves.

   For the full 50-year timeframe the individuals in the affected cohort would spend an average of $330 per year or $19,800 over that term.

This damages model represents the forward cost of a service for an individual who would purchase and stay with the service for a 50 year term. The logic above is based on market rates, and can be extrapolated consistently over any Class member's individual lifetime value calculation. The precise amount of the damages is the subject of expert testimony and will be disclosed in Plaintiff's expert report on damages.

  B. Value of information compromised:

1. The conservative estimate of the value of the exposed data per Class member is in the range of $40.00 to $50.00.

2. The precise amount of the damages is the subject of expert testimony and will be disclosed in Plaintiffs' expert report on damages.

  C. Value of mitigation efforts:

1. The members of the Class are presumably employed in a variety of occupations. Therefore, the value of mitigation efforts is appropriately calculated using the Bureau of Labor Statistics national median and mean hourly wage for "All Occupations." The

   median hourly wage is $ $23.11, according to the May 2023 National Occupational Employment and Wage Estimates, United States.

2. According to Guard Well Identity Theft Solutions, the average number of hours victims spend repairing the damage caused by identity theft is 165 hours. Also, the average number of hours spent mitigating the effects of a data breach are 3 to 4 hours per person.

Plaintiffs reserve the right to amend this preliminary calculation as additional information becomes available.

### Defendant's Statement

Defendant denies that Plaintiffs and/or the putative class are entitled to the relief sought, or to any relief at all in connection with their alleged claims. Defendant further disagrees with Plaintiffs' proposed multi-pronged damages model, particularly given the limited nature of information that was subject to the alleged data security incident, the logical leaps that would be required to attribute 50+ years of credit monitoring and identity theft subscription fees to a single incident that Defendant worked diligently to manage, the arbitrary valuation of the data allegedly compromised, and the model's failure to account for Defendant's extensive efforts to protect Plaintiffs' data before and after the data security incident.

**12. Settlement and ADR**

The parties will meet and confer in compliance with Civil Local Rule 16-8 and ADR Local Rule 3-5. In the event the parties agree that ADR is appropriate, the parties will select private ADR and promptly inform the court.

**13. Other References**

At this time, the parties do not believe the case suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. Narrowing of Issues**

At this time, the parties have not identified any issues that can be narrowed by agreement or motion but remain open to meeting and conferring regarding the potential narrowing of issues once this case proceeds beyond the pleading stage.

### 15. Expedited Trial Procedure

At this time, the parties do not believe the case is suitable for expedited trial.

### 16. Scheduling

The parties propose the following deadlines up to and until the Court has ruled on Plaintiffs' motion for class certification and respectfully request that the court set the deadline for dispositive motions and pretrial and trial dates following the Court's ruling on class certification:

| Event | Proposed Deadline |
| --- | --- |
| Deadline to amend/add parties | 90 days prior to the deadline for Plaintiffs to file their motion for class certification |
| Class Primary Expert Disclosures | 60 days prior to the deadline for Plaintiffs to file their motion for class certification |
| Class Rebuttal Expert Disclosures | 30 days prior to the deadline for Plaintiffs to file their motion for class certification |
| Last day to file motion for class certification | Ten months from the date on which Defendant files an Answer to the Consolidated Complaint |
| Deadline to file opposition to motion for class certification | 60 days following the deadline for Plaintiffs to file their motion for class certification |
| Deadline to file reply in support of motion for class certification | 90 days following the deadline for Plaintiffs to file their motion for class certification |
| Hearing on motion for class certification | At Court's Discretion |

### 17. Trial

Plaintiffs request trial by jury. At this time, the parties anticipate approximately five (5) to seven (7) days of trial.

### 18. Disclosure of Non-party Interested Entities or Persons

The parties have filed Certifications of Interested Entities or Persons per Civil Local Rule 3-15.

### 19. Professional Conduct

All attorneys of record are familiar with the District's Guidelines for Professional Conduct.

### 20. Other

None at this time.

DATED: July 10, 2025                    **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
John J. Nelson

|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | *s/John J. Nelson* |
| 4 | | John J. Nelson<br>Attorneys for Plaintiff Megan Koester |
| 5 | | |
| 6 | | |
| 7 | DATED: July 10, 2025 | **KOPELOWITZ OSTROW P.A**<br>Kristen Lake Cardoso |
| 8 | | |
| 9 | | |
| 10 | | *s/ Kristen Lake Cardoso* |
| 11 | | Kristen Lake Cardoso<br>Attorneys for Plaintiff Juantia Medina |
| 12 | | |
| 13 | | |
| 14 | DATED: July 10, 2025 | **AHDOOT & WOLFSON, PC**<br>Alyssa S. Brown |
| 15 | | |
| 16 | | |
| 17 | | *s/ Alyssa S. Brown* |
| 18 | | Alyssa S. Brown<br>Attorneys for Plaintiff Sedra Wright |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | DATED: July 10, 2025 | **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br>John J. Nelson |
| 23 | | |
| 24 | | |
| 25 | | *s/ John J. Nelson* |
| 26 | | John J. Nelson<br>Attorneys for Plaintiff Lasean Tardd |
| 27 | | |
| 28 | | |

JOINT CASE MANAGEMENT STATEMENT — - 10 -

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: July 10, 2025 | **FOLEY & LARDNER LLP** |
| 3 | | Joseph W. Swanson |
| | | John J. Atallah |
| 4 | | |
| 5 | | |
| 6 | | *s/ John J. Attallah* |
| | | John J. Atallah |
| 7 | | Attorneys for Defendant Crossroads Trading Co., Inc. |
| 8 | | |

**ATTESTATION**

I, John J. Nelson, hereby attest, pursuant to N.D. Cal. Civil Local Rule 5-1(h)(3), that concurrence to the filing of this document has been obtained from each signatory.

*s/ John J. Nelson*